IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-00066-01-CR-W-DW |
| | ) | |
| BRIAN J. DANIEL, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Daniel's Motion to Suppress Evidence (doc #27). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On February 15, 2013, a Criminal Complaint was filed against Brian J. Daniel. On March 12, 2013, the Grand Jury returned a one count indictment against defendant Daniel. The indictment charges that on February 14, 2013, defendant Daniel, having been convicted of a crime punishable by imprisonment for a term exceeding one year, possessed a firearm, to wit: a Sig Sauer P229 semi-automatic .40 caliber handgun loaded with eleven rounds with one chambered.

On February 26, 2014, an evidentiary hearing was held on defendant's motion to suppress. Defendant Daniel was represented by Assistant Federal Public Defender William J. Raymond. The Government was represented by Assistant United States Attorney William L. Meiners. The Government called Officer Bryan Britten of the Kansas City, Missouri Police

Department as a witness. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On February 14, 2013, Officer Bryan Britten and his partner, Officer Gaddis, were on patrol in the area of 38th and College. (Tr. at 3, 5) Officer Britten testified that the area of 39th to 36th and College has been a high narcotics area and that officers have made several drug arrests from several locations in that vicinity. (Tr. at 3-4)

2. At approximately 9:45 p.m., Officer Britten observed what he believed to be a hand-to-hand narcotics transaction. (Tr. at 4) The officers were driving northbound on College from 38th Street, a one-way street north. (Tr. at 4) A black Ford Explorer was parked on the west side of the street facing north. (Tr. at 4) The driver's seat was pushed forward and leaned against the steering wheel. (Tr. at 4) A black male was sitting in the back seat with his feet hanging out. (Tr. at 4) Another black male was facing him and they were "handing stuff back and forth." (Tr. at 4) The officers obtained the license plate on the vehicle. (Tr. at 4)

3. Officer Britten testified that he has been on the streets for fifteen years. (Tr. at 6) He estimated that he makes approximately 200 narcotics arrests per year. (Tr. at 6) Officer Britten testified that he has seen transactions like the one he witnessed on February 14, 2013, in the past. (Tr. at 5)

4. Officers Britten and Gaddis drove around the block as they ran the license plate through the computer. (Tr. at 4) The address that came back for the license plate was associated with a person, matching the description of the person in the vehicle, named Brian Daniel who had two felony warrants. (Tr. at 4, 6-7) When the officers came back around the block, they observed one of the black males involved in the hand-to-hand transaction walking away. (Tr. at 4) The officers decided to talk to the person who had been inside the vehicle because the outstanding warrants were for a person who resided at the address associated with the vehicle. (Tr. at 4) The person the officers had seen inside the vehicle was now outside the vehicle. (Tr. at 4)

5. Officer Britten testified that the officers conducted a consensual contact at first. (Tr. at 5, 7) The officers asked the person for his name and date of birth. (Tr. at 5, 7, 35) The person responded that his name was Brian Daniel, the name associated with the warrants. (Tr. at 5, 7) Officer Britten testified that the encounter then turned into a pedestrian check. (Tr. at 5, 7) At this point, Daniel was not free to leave while the officers investigated whether he was the person with the warrants. (Tr. at 7) Officer Britten went to his police vehicle to check if the birthdate given

by Daniel matched the one on the warrant. (Tr. at 5) Daniel was with Officer Gaddis. (Tr. at 5) As he was sitting in his vehicle, Officer Britten testified that he could see Daniel and Officer Gaddis through the windshield. (Tr. at 5) Officer Britten saw Daniel start to walk away from Officer Gaddis. (Tr. at 5) As Officer Gaddis closed the distance between himself and Daniel, Officer Britten saw Daniel toss down a baggie. (Tr. at 5) Officer Britten got out of his vehicle and put Daniel in handcuffs. (Tr. at 5) Officer Britten did not know whether Officer Gaddis saw Daniel throw down the baggie. (Tr. at 14)

6. The dash cam on the police vehicle captured the events beginning from when the officers were running the license plate through the computer and driving back around the block. (Tr. at 8-9; Government's Ex. 1) The video shows defendant Daniel throwing down a baggie at the 9:49:55 mark. (Tr. at 13-14; Government's Ex. 1) Officer Britten went to the baggie that he saw defendant Daniel throw down and picked it up. (Tr. at 15) The baggie contained a number of different controlled substances. (Tr. at 14)

7. Officer Britten testified that Officer Gaddis detected an odor coming from the vehicle and pointed it out to Officer Gaddis. (Tr. at 15) The vehicle's doors were closed, but Officer Gaddis indicated that he could smell marijuana. (Tr. at 37) Officer Britten testified that this conversation took place before his microphone was turned on. (Tr. at 37) The audio begins at the 9:51:58 mark. (Government's Ex. 1 at 9:51:58) Officer Britten testified that he then walked over to the vehicle and could also smell the marijuana. (Tr. at 42) Officer Britten described the odor as fresh marijuana, unburnt marijuana. (Tr. at 15) Officer Britten testified that he has encountered that odor thousands of times in the past. (Tr. at 15-16) The officers asked defendant Daniel if he had a gun in his vehicle. (Tr. at 36-37, 43) Daniel can be heard on the videotape stating that he has nothing in the car and that it is not his car. (Government's Ex. 1 at 9:52:38) Officer Britten told Daniel that he got Daniel's name when he ran the vehicle in the computer. (Tr. at 19) Officer Britten also told Daniel that he saw him in the vehicle when the officers had driven by. (Tr. at 20)

8. Officer Britten testified that based on the odor of marijuana emanating from the vehicle, as well as the seizure of the controlled substances that were thrown by defendant Daniel adjacent to the vehicle, Britten conducted a search of the vehicle. (Tr. at 16) Officer Britten found a loaded Sig Sauer pistol between the center console and the driver's seat. (Tr. at 16) Dispatch later advised that the gun was stolen. (Tr. at 23) Officer Britten also found in a backpack on the front passenger floorboard approximately 450 grams of marijuana, a cup with residue in it that appeared to have been used as a scoop, a scale with residue on it and baggies. (Tr. at 17-18) The only marijuana found inside the vehicle was inside a zipped up baggie that was in the zipped backpack on the floorboard. (Tr. at 46) When the marijuana was discovered, the officers can be heard on the videotape stating that

this was what they were smelling. (Government's Ex. 1 at 9:57:33)

9. Approximately $3,755 was seized from defendant Daniel's person. (Tr. at 18)

10. Title information recovered from inside the vehicle had defendant Daniel's name on it. (Tr. at 23; Government's Ex. 2)

11. While obtaining information from defendant Daniel for booking purposes, Officer Britten specifically told Daniel that he did not want to ask him anything about the incident. (Government's Ex. 1 at 10:11:16)

12. Defendant Daniel was taken away from the scene in a police wagon. (Tr. at 46) The vehicle was towed from the scene. (Tr. at 50)

### III. DISCUSSION

Defendant Daniel seeks to suppress all evidence and statements obtained during his arrest and the search of his vehicle. (Motion to Suppress Evidence (doc #27) at 1) Defendant argues that the officers did not have reasonable suspicion to justify his arrest and the subsequent search of his vehicle cannot be justified as a search incident to arrest. (Id. at 1, 5) According to defendant, the officers did not mention smelling marijuana on the videotape and, in any event, they could not have smelled the marijuana because the marijuana was contained within a Ziplock bag inside a zipped backpack. (Id. at 5-6) Finally, defendant argues that the search cannot be justified as an inventory search.[1] (Id. at 6) With respect to the suppression of statements, defendant argues that he was questioned at the scene without receiving a Miranda warning. (Id. at 3, 8)

A. Investigative Stop

Both investigative stops and arrests are seizures. However, an investigative stop need only be supported by a reasonable, articulable suspicion that criminal activity may be afoot,

---

[1]The Court finds that the search was a lawful search done incident to arrest and was further justified under the automobile exception to the warrant requirement. Given these justifications for the search, the Court need not address the issue of whether the search could also have been justified as an inventory search.

4

whereas an arrest must be supported by probable cause. See Terry v. Ohio, 392 U.S. 1, 25-31 (1968); United States v. Raino, 980 F.2d 1148, 1149 (8th Cir. 1992), cert. denied, 507 U.S. 1011 (1993).

The record in this case establishes that while patrolling in an area known for narcotics activity, Officer Britten and his partner observed what they believed to be a hand-to-hand narcotics transaction. (See Fact Nos. 1 and 2, supra) Officer Britten was an experienced officer who had been on the streets for fifteen years. (See Fact No. 3, supra) Officer Britten testified that he makes approximately 200 narcotics arrest per year and that he has seen transactions like the one he witnessed with defendant Daniel in the past. (Id.) The officers had a reasonable, articulable suspicion that defendant Daniel may have been engaged in criminal activity. In addition, prior to stopping and talking to defendant Daniel, the officers ran the license plate of the vehicle and obtained information that a person by the name of Brian Daniel, who resided at the address associated with the vehicle and who matched the description of the person in the vehicle, had two felony warrants. (See Fact No. 4, supra) Police may conduct a brief investigatory stop of a vehicle and its occupants based solely on the "reasonable suspicion" that a person for whom there is an outstanding arrest warrant is present in the vehicle. See United States v. White, 162 Fed. Appx. 520, 523 (6th Cir. 2006); United States v. Tellez, 11 F.3d 530, 532-33 (5th Cir. 1993), cert. denied, 511 U.S. 1060 (1994). The officers were justified in conducting an investigative stop.

The person stopped by the officers identified himself as Brian Daniel and gave his date of birth. (See Fact No. 5, supra) While Officer Britten confirmed through dispatch that Daniel was the person with the warrants, Daniel attempted to flee. (Id.) Officer Britten observed Daniel throw down a baggie. (Id.) Daniel was handcuffed. (Id.) The baggie contained a number of different controlled substances. (See Fact No. 6, supra) The Court finds that the officers had

probable cause to place defendant Daniel under arrest.

B. <u>Warrantless Search</u>

In <u>Arizona v. Gant</u>, 556 U.S. 332 (2009), the United States Supreme Court provided the following basic guidance when analyzing a warrantless search:

> Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)(footnote omitted).

<u>Gant</u>, 556 U.S. at 338.

1. <u>Search Incident to Arrest</u>

"Among the exceptions to the warrant requirement is a search incident to a lawful arrest. ... The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." <u>Arizona v. Gant</u>, 556 U.S. 332, 338 (2009)(citations omitted). Where there is no possibility that an arrestee could reach into his vehicle and obtain a weapon, there is no longer authority for police to search a vehicle as a search incident to arrest in the interest of officer safety. <u>Id.</u> at 343. However, the <u>Gant</u> court found that a search incident to arrest is justified if it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle. <u>Id.</u>

In this case, the officers observed what they believed to be a hand-to-hand narcotics transaction by defendant Daniel while he was seated in the vehicle. (<u>See</u> Fact No. 2, <u>supra</u>) Defendant Daniel then attempted to flee from the officers and threw down a baggie containing a number of different controlled substances. (<u>See</u> Fact Nos. 5 and 6, <u>supra</u>) Defendant Daniel was arrested. The Court finds that it was reasonable for the officers to believe that evidence relevant

6

to the crime of arrest might be found in the vehicle.

2.     Automobile Exception

In <u>Arizona v. Gant</u>, 556 U.S. 332 (2009), the Court listed other established exceptions to the warrant requirement, including the "automobile exception." The Court stated:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. ... If there is probable cause to believe a vehicle contains evidence of criminal activity, <u>United States v. Ross</u>, 456 U.S. 798, 820-21 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. ... <u>Ross</u> allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader.

<u>Gant</u>, 556 U.S. at 346-47. "Probable cause exists 'where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" <u>United States v. Cortez-Palomino</u>, 438 F.3d 910, 913 (8th Cir. 2006)(quoting <u>United States v. Kennedy</u>, 427 F.3d 1136, 1141 (8th Cir. 2005)).

The Court finds the following facts were present and, thus, available to Officer Britten to justify the warrantless search at the time the search took place. The officers observed what they believed to be a hand-to-hand narcotics transaction by defendant Daniel while he was seated in the vehicle. (<u>See</u> Fact No. 2, <u>supra</u>) When stopped by the officers, defendant Daniel attempted to flee from the officers and threw down a baggie containing a number of different controlled substances. (<u>See</u> Fact Nos. 5 and 6, <u>supra</u>) Both Officer Gaddis and Officer Britten detected an odor of marijuana coming from the vehicle.[2] (<u>See</u> Fact No. 7, <u>supra</u>) Based on these facts, the

---

[2] While defendant argues that the officers do not mention smelling marijuana on the videotape, Officer Britten testified that Officer Gaddis told him he smelled marijuana before the microphone was turned on. (<u>See</u> Fact No. 7, <u>supra</u>) After the marijuana was discovered, the officers do state on the videotape that this was what they were smelling. (<u>See</u> Fact No. 8, <u>supra</u>) As for defendant's argument that the officers could not have smelled the marijuana as it was contained

Court finds that Officer Britten had probable cause to believe that marijuana and/or other illegal substances were concealed within the vehicle. Thus, pursuant to the automobile exception, Officer Britten was authorized to conduct a warrantless search of the vehicle that was as thorough as a search authorized by warrant.

C. Statements

While defendant Daniel seeks the suppression of statements, he fails to identify any statements that he made at the scene as a result of improper questioning by the officers. The Court has viewed the videotape of the stop and subsequent seizure of the gun and drugs, Government's Exhibit 1. While defendant Daniel was asked if the vehicle was his and whether there was a gun in the vehicle, Daniel stated that he had nothing in the car because it was not his car. (See Fact No. 7, supra) Later in the videotape, Officer Britten specifically tells defendant Daniel that he does not want to ask him anything about the incident, but instead needs information from Daniel for booking purposes. (See Fact No. 11, supra) Given defendant's failure to point to any specific statement that he seeks to suppress and the Court's review of the videotape which did not bring to light any incriminatory statements made by defendant in response to police questioning, defendant's request to suppress statements must also be denied.

---

within a Ziploc bag inside a zipped backpack, the Court notes that a significant amount of marijuana was recovered from the vehicle along with a cup with residue in it that appeared to have been used as a scoop, a scale with residue on it and baggies and that a suspected transaction had taken place just minutes before. (See Fact Nos. 2 and 8, supra)

8

IV.  CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Daniel's Motion to Suppress Evidence (doc #27).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same.  A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

/s/ *Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE